**Opinion filed August 30, 2019**



**In The**

# Eleventh Court of Appeals

_____

## Nos. 11-17-00313-CR, 11-17-00314-CR, & 11-17-00315-CR
_____

## ORLANDO ELEAZAR GUEVARA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause Nos. CR24084, CR24136, & CR24170**

### M E M O R A N D U M   O P I N I O N

The jury convicted Orlando Eleazar Guevara of three offenses: delivery of a controlled substance in a drug-free zone (Cause No. 11-17-00313-CR, Trial Court Cause No. CR24084), possession of a controlled substance in a drug-free zone with the intent to deliver (Cause No. 11-17-00314-CR, Trial Court Cause No. CR24136), and engaging in organized criminal activity (Cause No. 11-17-00315-CR, Trial Court Cause No. CR24170). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112,

481.134 (West 2017); TEX. PENAL CODE ANN. § 71.02 (West Supp. 2018). The trial court sentenced Appellant to two concurrent terms of fifteen years in the Institutional Division of the Texas Department of Criminal Justice for the convictions for delivery of a controlled substance and possession of a controlled substance. The trial court sentenced Appellant to confinement for a term of twenty years in the Institutional Division of the Texas Department of Criminal Justice for the conviction for engaging in organized criminal activity. Additionally, the trial court ordered that the sentence of twenty years in Cause No. 11-17-00315-CR is to be served consecutively to the two fifteen-year sentences.

In a "combined" brief, Appellant brings four issues in these appeals. In his first issue, Appellant contends that the trial court abused its discretion when it denied his requested instruction with respect to the offense of engaging in organized criminal activity. In his second and third issues, Appellant asserts that the evidence is insufficient to support his convictions for engaging in organized criminal activity and possession with intent to distribute. In his fourth issue, Appellant contends that the trial court abused its discretion when it admitted an officer's opinion testimony. We affirm.

*Background Facts*

In May 2015, Nora Crawford worked as a confidential informant for Detective Joe Aaron Taylor of the Brownwood Police Department. Crawford arranged a controlled buy of 1.75 grams of methamphetamine from Elizabeth Willett. Crawford testified that Willett told her that Willett would get the methamphetamine from Willett's brother, Kevin Allen. Willett instructed Crawford to come to a residence located on Vincent Street in Brownwood on May 19. Before Crawford proceeded to the residence, Detective Taylor searched Crawford and equipped her with audio and video recording devices.

2

When Crawford arrived, Willett stated that she would "get it" and went into a bedroom. Crawford testified that both Allen and Appellant were in the bedroom. Willett returned with the methamphetamine, and Crawford gave her money. Crawford then weighed the methamphetamine and asked about purchasing more. Willett told Crawford that they would have more later. Crawford testified that she believed that Willett was referring to Allen and Appellant because Willett was going to be at work. Crawford set up with Willett another purchase of methamphetamine from Allen that would occur later that day. Crawford left the residence and met with Detective Taylor. Crawford informed Detective Taylor that she would be making another controlled purchase later that afternoon.

Before the second controlled buy, Crawford again met with Detective Taylor, and he searched her and equipped her with audio and video recording devices. Then, Crawford returned to the residence on Vincent Street. However, instead of purchasing methamphetamine from Allen, she purchased methamphetamine from Appellant because Allen did not have anymore. Again, Crawford left the residence and met with Detective Taylor.

Over the next three days, Crawford returned to the residence numerous times but stayed in contact with Officer Taylor. Crawford testified that a supply of methamphetamine was supposed to be delivered to the residence on Vincent Street on the night of May 21, 2015. Crawford waited all night for the supply to arrive, but it did not arrive. Crawford left that morning and later learned the supply was delivered after she left. She returned later that day, and Appellant, Allen, Willett, and Willett's husband were at the residence. Crawford testified that Appellant told her that he hid the methamphetamine outside because he thought the police were watching him. Appellant was the only person who knew where the methamphetamine was hidden. Crawford conducted a third controlled buy from

3

Appellant that day. As in the previous controlled buys, Crawford met with Detective Taylor before and after the purchase.

In addition to the drug transactions referenced above, Crawford testified that she observed Willett, Allen, and Appellant sell methamphetamine on numerous occasions to other people and cooperate with each other in making those sales. She testified that all three were doing the packaging and all three were conducting sales. Crawford observed Willett setting up drug purchases over the phone. Crawford also observed Willett "collect debts" on behalf of Appellant and Allen.

Subsequently, Detective Taylor obtained and executed a search warrant at the residence on Vincent Street. When Detective Taylor executed the warrant, Appellant fled the house and was arrested shortly thereafter. Allen surrendered 2.36 grams of methamphetamine located underneath couch cushions. Additionally, law enforcement located 17.46 grams of methamphetamine in a bathtub, as well as drug paraphernalia and packaging materials throughout the house.

Willett and Allen also testified at trial. The State called both of them as witnesses after they had pleaded guilty to offenses arising from the events related to Crawford's activities described above. Willett denied selling drugs with Appellant and Allen, and she denied knowing that Appellant and Allen were selling drugs from the house. She testified that she sold the methamphetamine to Crawford on the first occasion from her own supply without any participation with Appellant or Allen. Willett further testified that she did not know why she twice went into the bedroom where Appellant and Allen were located during the first drug transaction. Willett also denied setting up the second drug buy for Crawford to purchase methamphetamine from Appellant or Allen.

Allen acknowledged that he and Appellant sold methamphetamine from the house, including selling it to Crawford, but he denied that Willett had any knowledge

4

or participation in their drug sales. Allen also acknowledged that he was present in the bedroom when Willett entered it twice during the first drug transaction. However, he denied that either he or Appellant provided the methamphetamine that Willett delivered to Crawford. Allen also denied that Willett found drug customers for Allen and Appellant.

*Sufficiency of the Evidence*

In his second and third issues, Appellant contends that the evidence was insufficient to support his convictions for engaging in organized criminal activity and possession with intent to deliver. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the

conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant contends that the evidence was insufficient to support his conviction for engaging in organized criminal activity. As relevant to this appeal, a person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . , [he] commits or conspires to commit one or more [enumerated offenses]." PENAL § 71.02.(a). A combination is "three or more persons who collaborate in carrying on criminal activities." *Id.* § 71.01(a) (West 2011). The indictment alleged that Appellant, Allen, and Willett collaborated and conspired to commit the offense of manufacture or delivery of methamphetamine. Appellant asserts that the evidence was insufficient to show that three people combined to work together because Willett was not involved in a continuing course of criminal activities.

Appellant premises his evidentiary challenge on the testimony of Willett and Allen to the extent that they denied that Willett had any knowledge of or participation in Appellant's and Allen's drug transactions. Appellant acknowledges that Willett's and Allen's testimony conflicts with Crawford's testimony concerning Willett's involvement with Appellant's and Allen's drug transactions. Appellant contends that Crawford's testimony was uncorroborated testimony from a covert agent upon which the jury could not rely.

In *Cook v. State*, we addressed the corroboration requirement for the testimony of a covert agent. 460 S.W.3d 703 (Tex. App.—Eastland 2015, no pet.). Article 38.141 of the Texas Code of Criminal Procedure sets out the covert agent rule. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141 (West 2005). The standard for evaluating the sufficiency of the corroboration of the testimony of a covert agent is the same as that used for evaluating the sufficiency of the corroboration of the

6

testimony of an accomplice witness. *Malone v. State*, 253 S.W.3d 253, 256–58 (Tex. Crim. App. 2008); *Cook*, 460 S.W.3d at 708. Thus, when weighing the sufficiency of corroborating evidence under Article 38.141(a), we must exclude the testimony of the covert agent from consideration and examine the remaining evidence to determine whether there is evidence that tends to connect the defendant to the commission of the offense. *Malone*, 253 S.W.3d at 258; *Cook*, 460 S.W.3d at 708. The tends-to-connect standard does not present a high threshold. *Cook*, 460 S.W.3d at 708–09 (citing *Randall v. State*, 218 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.)).

Standing alone, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt. *Malone*, 253 S.W.3d at 257; *Cook*, 460 S.W.3d at 709. To be sufficient, the corroborating evidence must show more than just the "mere presence" of the defendant at or near the scene of the crime. *Malone*, 253 S.W.3d at 257; *Cook*, 460 S.W.3d at 709. However, the corroborating evidence does not have to directly link the defendant to the crime. *Cook*, 460 S.W.3d at 709; *Taylor v. State*, 328 S.W.3d 574, 578 (Tex. App.—Eastland 2010, pet. ref'd); *Smith v. State*, 211 S.W.3d 476, 478 (Tex. App.—Amarillo 2006, no pet.). Instead, the corroborating evidence need only tend to connect the defendant to the offense. *Malone*, 253 S.W.3d at 258–59; *Cook*, 460 S.W.3d at 709. We review the corroborating evidence in the light most favorable to the verdict. *Cook*, 460 S.W.3d at 709, *Taylor*, 328 S.W.3d at 578; *Smith*, 211 S.W.3d at 478.

We disagree with Appellant's contention that Crawford's testimony was uncorroborated. As was the case in *Cook*, the State offered audio and video recordings of the three drug transactions where Crawford purchased methamphetamine from Willett, Allen, and Appellant. *See Cook*, 460 S.W.3d at

7

709–10. These recordings were published to the jury, thereby permitting the jury to make its own determinations regarding the images and sounds depicted. *See id.* (citing *Cantelon*, 85 S.W.3d at 459–62). Additionally, Detective Taylor searched Crawford before each transaction to establish that she did not have any drugs in her possession prior to the transactions. *See id.* The drugs that Crawford purchased in three transactions were offered into evidence. Finally, Willett and Allen acknowledged that each of them sold Crawford drugs during the first and second transactions. *See Gray v. State*, No. 11-16-00358-CR, 2018 WL 6928987, at *4 (Tex. App.—Eastland Dec. 31, 2018, no pet.) (mem. op., not designated for publication) (holding that accomplice-witness testimony can be used to corroborate covert-agent testimony.)

The jury could have rationally found that the corroborating evidence tended to connect Appellant to both Allen and Willett in a continuing course of criminal activities to deliver methamphetamine. Since Crawford's testimony was corroborated, the jury could consider her testimony in the same manner as any other competent evidence. *See Castillo v. State*, 517 S.W.3d 363, 376 (Tex. App.—Eastland 2017, pet. ref'd) (citing *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002)) (dealing with accomplice-witness testimony). While Crawford's testimony about Willett's participation with Appellant and Allen conflicted with Willett's and Allen's testimony, it was within the province of the jury to resolve those conflicts, and we defer to the jury's resolution. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Furthermore, based upon his review of Crawford's and Willett's conversation during the first drug transaction, Detective Taylor opined that he believed that Willett was working with Allen to sell drugs. This testimony from Detective Taylor, along with Allen's acknowledgement that he and Appellant sold drugs together and Crawford's testimony that Appellant, Allen, and Willett were

selling drugs together, constituted sufficient evidence upon which a rational trier of fact could have found Appellant guilty of engaging in organized criminal activity as alleged in the indictment. We overrule Appellant's second issue.

In Appellant's third issue, he contends that the evidence was insufficient to support his conviction for possession with intent to distribute. Specifically, Appellant asserts that the evidence was insufficient to show that Appellant possessed the 17.46 grams of methamphetamine that was found in the bathtub of the residence at the time that the police served the search warrant on the house. Appellant relies on Allen's testimony claiming ownership of this methamphetamine and Allen's testimony that he attempted to hide it in a hole near the bathtub as the police arrived but that it fell out. Appellant also asserts that the State's assertion that he possessed this methamphetamine is "pure speculation."

A person commits the offense of possession with intent to deliver a controlled substance if he knowingly possesses a drug with the intent to deliver it. *See* HEALTH & SAFETY § 481.112(a). Possession is defined as "actual care, custody, control, or management." PENAL § 1.07(a)(39). To prove unlawful possession of a controlled substance, the State must show (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015). The evidence must establish that the accused's connection with the drugs was more than just his fortuitous proximity to someone else's drugs. *Id.* at 405–06. Possession of drugs need not be exclusive; rather, control over contraband may be jointly exercised by more than one person. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

Texas courts have used an "affirmative links" analysis for instances when the accused was not in exclusive possession of the place where the substance was found. *Poindexter*, 153 S.W.3d at 406. In this circumstance, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances that affirmatively link the accused to the contraband. *Id.* (citing *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts); *see also Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 n.12). The following links have been applied to infer knowledge relating to the contraband: (1) the defendant's presence when a search was conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Tate*, 500 S.W.3d at 414 (citing *Evans*, 202 S.W.3d at 162 n.12). It is not the number of links that is dispositive; rather, it is the logical force of all of the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162.

Although Appellant was not in exclusive possession of the place where the drugs were found, the independent facts and circumstances justify the jury's conclusion that Appellant had possession of the methamphetamine found in the bathtub. The State established several affirmative links between Appellant and the methamphetamine. Appellant was present when the search of the residence occurred. Appellant fled the house when the police executed the search warrant. Detective Taylor testified that the bathtub was in Appellant's direct path as Appellant fled the house. Thus, Appellant was in close proximity to the bathtub where the methamphetamine was found. Additionally, Appellant lived in the residence and therefore had the right to possess the bathroom where the methamphetamine was found. The police found several items of paraphernalia associated with methamphetamine inside the house, including smoking pipes, a smoking device, packaging materials, and scales. Finally, the evidence we have previously discussed in connection with Appellant's conviction for engaging in organized criminal activity affirmatively linked Appellant to the methamphetamine found in the bathtub. Based on the evidence affirmatively linking Appellant to the methamphetamine, a rational jury could have found beyond a reasonable doubt that Appellant knowingly possessed the methamphetamine found in the bathtub. We overrule Appellant's third issue.

*Expert Testimony*

In his fourth issue, Appellant contends that the trial court abused its discretion when it admitted Detective Taylor's opinion testimony pertaining to his interpretation of Crawford's and Willett's discussions during the first drug buy. Appellant asserts that the admission of this testimony was erroneous because the matter at issue was within the knowledge and understanding of the average juror and, therefore, was not helpful to the jury.

The trial court's ruling on the admissibility of expert testimony is reviewed for an abuse of discretion. *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009). The admissibility of expert testimony is governed by Rule 702 of the Texas Rules of Evidence, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702.

At trial, the prosecutor played several portions of the audio recording of the first controlled buy. The prosecutor asked Detective Taylor to recite the words stated by both Crawford and Willett during the transaction. Detective Taylor stated that Crawford asked Willett: "Where is your brother at?" After Willett returned a second time from the bedroom where Allen and Appellant were located, Crawford asked Willett: "What did he say?" Crawford later asked Willett: "What can he do for me? He's right there?" and "What does your brother have left?" Detective Taylor also testified that Willett replied at some point: "I don't know. . . . I'll see what he's got."

At this point in the questioning, the prosecutor informed the trial court that he intended to ask Detective Taylor, based on Detective Taylor's experience as a narcotics investigator, whether "that conversation indicate[d] that Ms. Willett and her brother were working in conjunction." Appellant objected, arguing that the opinion went to an ultimate issue of the case. The trial court overruled his objection. The prosecutor then asked Detective Taylor what the conversation between Crawford and Willett indicated about Willett and Allen. Detective Taylor testified that it meant that "they were working with one another" and had knowledge of each other's drug dealing.

We first note that opinion testimony "is not objectionable just because it embraces an ultimate issue." TEX. R. EVID. 704. Appellant asserts on appeal that Detective Taylor's opinion was not helpful to the jury "because the matter at issue was within the knowledge and understanding of the average juror, and the opinion was therefore not helpful to the jury." Appellant asserts that Detective Taylor was offering an opinion on Willett's veracity with respect to her previous testimony denying any knowledge of or participation in Appellant's or Allen's drug activities. Assuming Appellant preserved this complaint for appellate review, we conclude that the trial court did not abuse its discretion by overruling Appellant's objection to Detective Taylor's opinion testimony.

Expert testimony must aid, not supplant, the jury's fact-finding role. *See Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). Thus, expert testimony pertaining to the truthfulness of a particular witness is inadmissible under Rule 702. *See Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993). We disagree with Appellant's contention that Detective Taylor was offering an opinion about Willett's truthfulness. Detective Taylor offered his opinion of the matters discussed during the first drug transaction between Crawford and Willett. In this regard, Detective Taylor's opinion addressed matters that are not common knowledge of what jurors already know regarding the manner in which drug transactions are conducted and discussed. *See Morris v. State*, 361 S.W.3d 649, 668–69 (Tex. Crim. App. 2011) (noting that testimony about grooming in a child sexual assault case is useful to the jury because it is beyond the jury's common knowledge and understanding). The trial court could have reasonably determined that Detective Taylor's opinion would assist the jury in understanding Willett's actions and comments during the first drug transaction. Accordingly, we overrule Appellant's fourth issue.

*Jury Charge Error*

In his first issue, Appellant contends that the trial court erred when it denied his requested instruction with respect to the offense of engaging in organized criminal activity. At the charge conference, Appellant requested that the trial court include an instruction that a combination means that there must be more than one crime or criminal episode. Appellant cited *Munoz v. State*, 29 S.W.3d 205, 208 (Tex. App.—Amarillo 2000, no pet.), in support of his request to the trial court. The trial court denied this request.

We review a claim of jury charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *See State v. Ambrose*, 487 S.W.3d 587, 594 (Tex. Crim. App. 2016). Our first duty in analyzing a jury charge issue is to decide whether error exists. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017) (citing *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Id.* If a timely objection or request was lodged at trial, reversal is required if the error resulted in "some harm" to the defendant. *Elizondo v. State*, 487 S.W.3d 185, 204 (Tex. Crim. App. 2016). Appellant asserts that he has suffered some harm requiring reversal. Because we conclude that the trial court's charge was not erroneous in this case, we do not conduct a harm analysis. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)).

The court in *Munoz* noted that a continuing course of criminal activity must encompass more than one crime or criminal episode. 29 S.W.3d at 208 (citing *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999); *Ross v. State*, 9 S.W.3d 878, 882 (Tex. App.—Austin 2000, no pet.)). As noted by Appellant, this is a principle that we have previously noted in *Roberson v. State*, 311 S.W.3d 642, 648

(Tex. App.—Eastland 2010, no pet.) (citing *Nguyen*, 1 S.W.3d at 697; *Smith v. State*, 36 S.W.3d 908, 910 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd)). *Roberson* and *Munoz* were both cases involving a review of the sufficiency of the evidence for a conviction for engaging in organized criminal activity.

Appellant acknowledges that the trial court's charge tracked the statutory language for the offense of engaging in organized criminal activity. Specifically, the trial court's charge defined "combination" as "three or more persons who collaborate in carrying on criminal activities." This definition tracked the applicable definition in the Penal Code. *See* PENAL § 71.01(a). Appellant has not cited any authority that would require an additional instruction, regarding a finding of more than one crime or criminal episode, to be given for the definition of a combination.

The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see* CRIM. PROC. art. 36.14 (West 2007). A jury charge that tracks the language of a particular statute is a proper charge. *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (citing *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994)) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge."); *Duffy v. State*, 567 S.W.2d 197, 204 (Tex. Crim. App. 1978); *Benn v. State*, 110 S.W.3d 645, 648 (Tex. App.—Corpus Christi 2003, no pet.). "Normally, if the instruction is not derived from the code, it is not 'applicable law.'" *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007).

As we previously noted, the trial court instructed the jury on the statutory definition of "combination." As noted in *Martinez*, following the law as set out in the Penal Code will not be deemed error. 924 S.W.2d at 699. This definition used the words "criminal activities," which is indicative of multiple crimes. Further, the

trial court's charge defined "collaborate in carrying on" as "working together with a specified number of others in specified criminal activities." Lastly, the application portion of the court's charge required a finding that Appellant, Allen, and Willett performed an overt act in pursuance of an agreement, to-wit: "the delivery and distribution of methamphetamine on multiple occasions." Accordingly, the trial court did not err in denying Appellant's request for an additional instruction that the jury was required to find the commission of more than one crime. We overrule Appellant's first issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


August 30, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.